**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BLUEFIELD DIVISION**

**SHELIA HALLMAN-WARNER and
ROSCOE OLIVER WARNER,**

       **Plaintiffs,**

**v.**                         **Case No.: 1:17-cv-02882**

**BLUEFIELD STATE COLLEGE, et al.,**

       **Defendants.**

**PROPOSED FINDINGS AND RECOMMENDATIONS**

On May 11, 2017, Plaintiffs, proceeding *pro se*, filed a complaint alleging that Bluefield State College ("BSC"), the employer of Plaintiff Shelia Hallman-Warner ("Plaintiff"), retaliated against her in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (ECF No. 1). Plaintiffs further allege various similar and related claims against twelve individuals associated with BSC. (*Id.*). This matter is assigned to the Honorable David A. Faber, United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Currently pending are Defendants' Motion to Dismiss, (ECF No. 28); Defendants' Motion to Strike Reply to Response, (ECF No. 37), and Defendants' Motion to Strike Plaintiffs' Supplement to Complaint, (ECF No. 41).

With respect to the Motion to Strike Reply to Response, the Court **GRANTS** the motion. (ECF No. 37). The Local Rule is clear that a surreply memorandum is not to be

filed except with leave of court. *See* L. R. Civ. P. 7.1(a)(7). Even after being alerted to this Local Rule by Defendants' Motion to Strike, Plaintiffs failed to request leave of court to file their surreply memorandum. Therefore, the surreply memorandum is stricken from the record and will not been considered in this PF&R.

On the other hand, the undersigned **DENIES** Defendants' Motion to Strike Plaintiffs' Supplement to the Complaint, as it provides updated information regarding the status of Plaintiff's pending grievances with the West Virginia Public Employees Grievance Board ("PEGB") (ECF No. 41). As Defendants have raised the issue of exhaustion, the existence and status of Plaintiff's administrative grievances are highly relevant to this proceeding. Thus, the undersigned has reviewed and considered the Supplement to the Complaint in preparing the PF&R.

In regard to Defendants' Motion to Dismiss, the undersigned finds that the issues have been thoroughly briefed by the parties, and oral argument would not assist in a resolution of the motion. Having fully considered the allegations in the complaint and Plaintiffs' supplemental filings, as well as the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the presiding District Judge **GRANT** Defendants' Motion to Dismiss. The reasons for dismissal are discussed below.

## I.    Relevant Factual History as Alleged in the Complaint

The following facts are taken from the complaint and Plaintiffs' filings in support of the complaint. (ECF Nos. 1, 5, 6, 32, 39, 41, 43). For the purpose of evaluating Defendants' Motion to Dismiss, Plaintiffs' factual allegations are accepted as true. Plaintiff is a 61-year-old tenured Assistant Professor of Criminal Justice at BSC, having been a faculty member at that institution for 23 years. (ECF No. 1 at 10). In 2015, Plaintiff began vocalizing her concerns regarding institutional practices; in particular, the "lack of

transparency, arbitrary and capricious decision-making, pay inequities, arbitrary and capricious decision making related to salary adjustments, safety on campus, deprival of open comment section at public governing board meetings in violation of bylaws, disparate and discriminatory treatment, alleged violations of accreditation, alleged waste, fraud, and abuse of federal funding, entitlement to funding based on status as a Historically Black College, changing of seal and logo in excess of close to $1 million dollars, as enrollment is less than 1300 students, with top 5 administrators making over $800,000, annually, as faculty have had no cost of living increases in minimum 12 years." (*Id.*). Over the next year or two, Plaintiff continued to openly express her concerns at various institutional meetings, to members of BSC's Board of Governors, and to college evaluators. (*Id.* at 11).

Beginning on March 26, 2015 and continuing thereafter, the defendants allegedly engaged in a pattern and practice of harassing, humiliating, shunning, ignoring, undermining, and punishing Plaintiff in retaliation for her criticisms of BSC's administration and its financial and employment practices. (*Id.* at 10). As detailed in the complaint and in a supplement to the complaint, (ECF Nos. 1, 5), the defendants allegedly made Plaintiff's work life a "sheer living hell" in their daily treatment of her. In addition, the defendants denied Plaintiff a well-deserved promotion and even initiated a criminal action against her. (ECF No. 5 at 2-3). The criminal action arose from a class lecture given by Plaintiff on August 16, 2016. (ECF No. 1 at 11). On that day, Plaintiff was scheduled to teach a class on Victimology. She brought a tote to the class, which unbeknownst to her, contained a stun gun and pepper spray. (*Id.*). Upon discovering these items in her tote, Plaintiff removed them, displayed them to the class for approximately thirty seconds, and made a joke about them that allegedly included inappropriate language. (ECF No. 1 at 11-

12; ECF No. 32 at 8, 13; ECF No. 40 at 2). When BSC administration learned of the incident, an investigation ensued and culminated in Jason Brooks, Director of Campus Security, issuing a citation to Plaintiff, which charged her with the misdemeanor crime of disturbing a school. (ECF No. 1 at 11). As a result of the citation, Plaintiff was required to appear before a county magistrate, who was a prior student of hers, causing Plaintiff to suffer inconvenience and humiliation. (*Id.*). Two months later, the Mercer County Prosecutor dismissed the charge. (*Id.*). In addition to the citation, Plaintiff received a letter of warning in her personnel file, citing her with unprofessional conduct for displaying the stun gun and pepper spray to her class. (*Id.* at 12).

In response to the defendants' harassment and maltreatment, Plaintiff filed grievances with the PEGB. (ECF No. 1 at 12, ECF No. 32 at 4). At least one of the grievances was abandoned by Plaintiff, who while attending to her sick husband, failed to file the paperwork necessary to continue the grievance process. (ECF No. 5 at 1). At least one other grievance remains pending. (ECF No. 39). Additionally, Plaintiff filed a charge with the United States Equal Employment Opportunity Commission ("EEOC") on December 15, 2016, accusing BSC of discriminatory retaliation. (ECF No. 43 at 2-5). In the EEOC's Intake Questionnaire, Plaintiff alleged that BSC retaliated against her "for reporting alleged violations of accreditation, being 'vocal' re.: alleged waste, fraud, and abuse of federal monies." (*Id.* at 3). On February 8, 2017, the EEOC issued a "right-to-sue" letter, advising Plaintiff that the facts alleged in the charge failed to state a claim under any of the statutes enforced by the EEOC. (ECF No. 1 at 6). Within 90 days of receiving the right-to-sue letter, Plaintiff filed the instant action.

## II.    **Specific Causes of Action Asserted Against Each Defendant**

Plaintiff asserts a number of claims against the defendants, which are discussed in

detail in the complaint and supplemental filings. They are summarized as follows:

1.    <u>Bluefield State College</u>. Plaintiffs claim that BSC is liable for retaliation under Title VII of the Civil Rights Act of 1964; intentional infliction of emotional distress; hostile work environment; harassment; defamation of character; shunning; unwarranted discipline; disparate treatment; malicious prosecution; violation of privacy; denial of promotion; denial of "opportunity to uphold faculty duties, obligations, responsibilities"; and undermining of professional judgment. (ECF No. 1 at 10). Plaintiffs allege that BSC's actions negatively impacted Plaintiff's work performance and interfered with her ability to teach her students. (*Id.*).

2.    <u>Sheila Johnson, Vice-President of Financial Affairs</u>. Plaintiffs allege that Defendant Johnson retaliated against Plaintiff "for speaking out related to various issues regarding institutional practices" by directing that a criminal citation for disturbing a school be issued to Plaintiff after she brought to class and briefly displayed a stun gun and pepper spray. (*Id.* at 10-11). According to Plaintiffs, Defendant Johnson devised a scheme to humiliate Plaintiff with the criminal charge. (ECF No. 32 at 13). In addition, Defendant Johnson allegedly ordered that tapes of Plaintiff's classes be pulled and reviewed for the purpose of manipulating charges and fabricating evidence. (ECF No. 1 at 11).

3.    <u>Jason Brooks, Director of Campus Security</u>. Plaintiffs accuse Defendant Brooks of "malicious prosecution" for citing Plaintiff with disturbing a school. Plaintiffs claim that Brooks failed to properly investigate the matter before writing the citation, and then tried to intimidate Plaintiff when he learned that she had requested a jury trial on the charge. (*Id.* at 11).

4.    <u>Dr. Angela Lambert, Interim Provost and Vice-President, Academic Affairs</u>. According to Plaintiffs, Defendant Lambert issued a letter of warning to Plaintiff in

September 2016 after Plaintiff displayed the stun gun and pepper spray to her class. (*Id.* at 12). The letter allegedly contained information taken from a prior written warning given to Plaintiff, which should have been removed from her personnel file before Defendant Lambert became Interim Provost, and, therefore, should not have been available for review. Plaintiffs accuse Defendant Lambert of a "breach of privacy" for accessing the old letter of warning. (*Id.*). In addition, Plaintiffs claim that Defendant Lambert harassed Plaintiff by subjecting her to "increased scrutiny"; by sending Plaintiff a lengthy letter about medical leave while Plaintiff was on medical leave; and by violating the mandates of the Higher Education Policy Commission when Defendant Lambert allowed the chair of the Criminal Justice Department to "ignore input" from Plaintiff regarding matters affecting the Department. (*Id.*).

5.    <u>Jonetta Augenbaugh, Director, Human Resources</u>. Plaintiffs claim that Defendant Augenbaugh improperly investigated a complaint filed against Plaintiff when there was no institutional policy governing such investigations. Defendant Augenbach also allegedly provided Plaintiff with an unrelated policy on grievances and violated several West Virginia code sections related to Plaintiff's grievance proceedings; for example, Defendant Augenbach scheduled a hearing when she knew Plaintiff was on medical leave; failed to give Plaintiff a transcript of a grievance hearing; and provided Plaintiff with a flash drive that did not accurately represent what had transpired at a grievance hearing. (*Id.* at 12-13). Moreover, Defendant Augenbaugh allegedly violated Plaintiff's privacy by wrongfully disclosing to the Interim Provost the letter of warning given to Plaintiff in 2015, which Plaintiffs claim should have already been removed from Plaintiff's personnel file. Plaintiffs add that Defendant Augenbaugh acted inappropriately by filling a vacant position for a Law Enforcement professor without Plaintiff's input.

6.    <u>Martha Eborall, Dean, Arts and Sciences</u>. Plaintiffs contend that Defendant Eborall harassed Plaintiff by subjecting her to heightened scrutiny; by failing to support Plaintiff when others harassed her; by undermining Plaintiff's professional judgment; by failing to address and resolve pay inequities repeatedly pointed out by Plaintiff; by excluding her from search committees to fill critical positions; and by threatening Plaintiff with insubordination and disciplinary actions. In addition, Defendant Eborall allegedly treated Plaintiff in a disparate manner by requiring her to supply additional paperwork for personal leave that had not been required in the past and was not requested from Plaintiff's colleagues. (*Id.* at 13).

7.    <u>Amanda Matoushek, Chair of Social Sciences</u>. Plaintiffs complain that Defendant Matoushek placed Plaintiff under "increased scrutiny," refused to give her a letter of recommendation for promotion, would not appoint her to a search committee authorized to fill Criminal Justice faculty positions, and denied her the right to provide input on course schedules and adjunct positions. (*Id.* at 14).

8.    <u>Sandra Wynn, Chair, Promotion and Tenure Committee 2016</u>. Plaintiffs assert that Defendant Wynn denied Plaintiff due process in the handling of her request for a promotion, a request that was denied by Defendant Wynn's committee. (ECF No. 1 at 14).

9.    <u>Dr. Joanne Robinson, Vice-President of Student Affairs</u>. Plaintiff claims that Defendant Robinson allowed an anonymous letter to be printed in BSC's student publication, <u>The Bluefieldian</u>, which Plaintiffs claim mocked the Criminal Justice Department for its disputes over online learning platforms. According to Plaintiff, printing the "offensive" letter violated "college catalog policy." (*Id.* at 14).

10.    <u>Jerry Perdue, Editor, The Bluefieldian</u>.  Plaintiffs accuse Defendant Perdue of printing the above-described offensive letter "intentionally and with malice aforethought." (*Id.*).

11.    <u>Marsha Krotseng, President, BSC</u>.  Plaintiffs allege that Defendant Krotseng denied Plaintiff a promotion on the basis of discriminatory and retaliatory reasons. (*Id.* at 14-15). Plaintiffs further claim that Defendant Krotseng was "complicit" in allowing selective application of various policies, in allowing the Criminal Justice Department to deteriorate, in allowing violations of due process and equal protection, and in allowing Plaintiff to be disrespected. Defendant Krotseng also allegedly failed to effectively lead BSC and supervise administrators. Plaintiffs contend that Defendant Krotseng is "ultimately responsible for each and every action of violation of constitutional rights and disrespect cited herein." (*Id.*).

12.    <u>Robert E. Perkinson, Jr., Chair, BSC Board of Governors</u>.  Plaintiffs allege that Defendant Perkinson is liable for failing to prevent cronyism and bullying at BSC, for supporting the President of BSC despite her ineffectiveness, and for allowing a climate and culture of disrespect. In addition, Defendant Perkinson is "complicit in demonstrating deliberate indifference" and in the violation of Plaintiff's constitutional rights. (*Id.* at 15).

13.    <u>Gary Moore, Vice Chair, BSC Board of Governors</u>. Plaintiffs accuse Defendant Moore of being  "complicit in allowing failed leadership to continue," ignoring Plaintiff's concerns about the hostile climate at BSC, allowing disparate treatment and retaliation of Plaintiff, and of being "complicit in deliberate indifference, ignoring outcries and vote of no confidence against the President." (ECF No. 1 at 15).

### III.    **Motion to Dismiss**

Defendants raise a number of defenses to Plaintiffs' complaint; including, sovereign immunity; qualified immunity; failure to exhaust administrative remedies with both the EEOC and the PEGB; failure to state a claim under Title VII; failure to state a claim of malicious prosecution; failure to state a claim of defamation; failure to state a claim of intentional infliction of emotional distress; failure to comply with Federal Rule of Civil Procedure 8; and failure to state any plausible claim for relief under federal law. (ECF No. 30). In short, Defendants argue that while Plaintiffs allege a hodge podge of generalized workplace grievances, the factual allegations in their complaint simply do not satisfy the criteria of any claim recognized under Title VII, which is the purported basis of federal jurisdiction in this case, or under any other federal law. Furthermore, Defendants contend that even if the Court locates in the hodge podge of the complaint some viable claim under federal law, the complaint must be still dismissed because (1) Plaintiffs failed to exhaust administrative remedies before filing the complaint and (2) all of the defendants are entitled to immunity from suit.

### IV.    **Standard of Review**

Defendants file their Motion to Dismiss under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. Rule 12(b)(1) concerns the lack of subject matter jurisdiction, while Rule 12(b)(6) involves complaints that fail to state a claim upon which relief may be granted. Accordingly, the standards governing those subsections are applicable.

#### A. *Rule 12(b)(1)*

Defendants contend that dismissal is warranted on the grounds of sovereign immunity and lack of exhaustion, arguing that these principles preclude the Court's

subject matter jurisdiction over the complaint. A Rule 12(b)(1) motion may be presented in one of two ways. First, the movant may claim that the jurisdictional allegations of the complaint are not true; in other words, a "factual attack." *Johnson v. West Virginia Division of Rehab. Servs.*, No. CV 3:16-9308, 2017 WL 1395501, at \*2 (S.D.W. Va. Apr. 17, 2017) (citing *Thigpen v. United States*, 800 F.2d 393, 401 n.15 (4th Cir. 1986)). In that circumstance, the court "is to regard the pleadings as mere evidence on the issue, and may consider evidence outside of the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir. 1991) (citing *Adams v. Bain,* 697 F.2d 1213, 1219 (4th Cir. 1982)). Second, the movant may contend, as Defendants do here, that the "complaint simply fails to allege facts upon which subject matter jurisdiction can be based", also called a "facial attack." *Johnson* 2017 WL 1395501, at \*2. When presented with this contention, the Court assumes that the allegations in the complaint are true and affords the plaintiff the same procedural protection he would receive under Rule 12(b)(6). *Id.* The burden of proving that the Court has subject matter jurisdiction rests with the plaintiff. *Johnson v. North Carolina,* 905 F.Supp.2d 712, 719 (W.D.N.C. Oct. 17, 2012). The Court should grant dismissal when "the material jurisdictional facts are not in dispute and the moving party is entitled to prevail as a matter of law." *Id.* (quoting *Adams,* 697 F.2d at 1219).

### B.  Rule 12(b)(6)

Rule 12(b)(6) permits the Court to dismiss a complaint when it fails to state a claim upon which relief may be granted. A complaint fails to state a claim when, viewing the factual allegations as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal*, 556 U.S.

662 (2009) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). The Supreme Court further explained the "plausibility" standard in *Iqbal*, stating:

> The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 1955) (internal citations omitted). "Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679. Determining whether a complaint states a facially plausible claim for relief is a "context-specific task that requires the court to draw on its judicial experience and common sense." *Id.* (citing *Iqbal v. Hasty*, 490 F.3d 143, 157–158 (2nd Cir. 2007)).

As stated, in deciding a Rule 12(b)(6) motion, the Court must accept as true all of the factual allegations contained in the complaint. *Erickson v. Pardus*, 551 U.S. 89 (2007). However, the court is not required to accept the legitimacy of legal conclusions. *Iqbal*, 556 U.S. at 678. To survive a motion to dismiss, a complaint must plead both a factual and legal basis for relief. *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to establish a facially plausible complaint. *Id.*

Courts are required to liberally construe *pro se* complaints, such as the one filed in this action. *Erickson*, 551 U.S. at 94. However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause

of action. *Bass v. E.I. Dupont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir. 2003). The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), construct the plaintiff's legal arguments for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985). A Rule 12(b)(6) motion should be granted only '"where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.'" *Hartmann v. Calif. Dept. of Corr. & Rehab.,* 707 F.3d 1114, 1122 (9th Cir.2013) (citing *Mendiondo v. Centinela Hosp. Med. Ctr.,* 521 F.3d 1097, 1102 (9th Cir.2008)).

## V.    Discussion

Plaintiffs indicate in the complaint that jurisdiction rests in the federal court because they raise a federal question under Title VII of the Civil Rights Act of 1964. (ECF No. 1 at 3). Accordingly, the undersigned first addresses Title VII to determine whether Plaintiffs state a claim under that section of the Civil Rights Act.

### A. Title VII Claims

Title VII of the Civil Rights Act of 1964 prohibits discrimination in the hiring, firing, "compensation, terms, conditions, or privileges of employment" on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a). In addition, Title VII provides, in relevant part, "[i]t shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). The term "employer" is defined in Title VII as "a person engaged in an industry affecting

12

commerce who has fifteen or more employees" and "any agent of such a person." *Id.* § 2000e(b). The term "person," as used in the statute, includes governments and governmental agencies. *Id.* § 2000e(a). While the term "agent" is not further defined in Title VII, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has clarified that "agent" does **not** include employees, even supervising employees, as they are not *employers*; only employers are subject to suit under Title VII. *See Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 180-81 (4th Cir. 1998); *and Jones v. Tyson Foods, Inc.,* 378 F.Supp.2d 705, 708-09 (E.D. Va. 2004) (finding that "supervisors are not liable in their individual capacities for Title VII violations.").

In addition, Title VII does not apply to all types of retaliation in the workplace. Instead, Title VII only prohibits retaliation in response to "protected activity." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 280-81 (4th Cir. 2015). Protected activity is employee action that challenges employment practices, which discriminate on the basis of race, color, religion, sex, or national origin. *Woodbury v. Victory Van Lines,* No. CV TDC-16-2532, 2017 WL 6555642, at *8 (D. Md. Dec. 21, 2017) (holding that protected activity "consists of complaining of violations of Title VII."). Protected activity comes in two forms: participation and opposition. *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). "Activities that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Id.* In contrast, "[e]mployees engage in protected oppositional activity when, inter alia, they 'complain to their superiors about suspected violations of Title VII.'" *Boyer-Liberto,* 786 F.3d at 281 (quoting *Bryant v. Aiken Reg'l Med. Ctrs. Inc.,* 333 F.3d 536, 543–44 (4th Cir.2003)).

In this case, Plaintiffs have sued BSC and twelve individuals, in part for violations of Title VII. However, as explained above, none of the individuals named in the complaint qualifies as an "employer" under Title VII. Therefore, the undersigned **FINDS** that Plaintiffs' Title VII claims against Defendants Johnson, Brooks, Lambert, Augenbaugh, Eborall, Matoushek, Wynn, Robinson, Perdue, Krotseng, Perkinson, and Moore should be dismissed, with prejudice, for failure to state a claim upon which relief may be granted.

BSC is Plaintiff's employer. Therefore, the undersigned must examine Plaintiffs' allegations against BSC to determine whether Plaintiffs state a plausible Title VII claim. Before addressing the substance of the allegations, however, the Court must consider whether the Court has subject matter jurisdiction over Title VII claims against BSC. *See Jones v. American Postal Workers Union,* 192 F.3d 417, 422 (4th Cir. 1999) ("The existence of subject matter jurisdiction is a threshold issue, which this court must address before addressing the merits" of a claim) (citing *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 95 (1998)). BSC argues that this Court lacks subject matter jurisdiction for two reasons. First, BSC, as an arm of the State of West Virginia, is immune from prosecution under the Eleventh Amendment to the United States Constitution. Second, the Court lacks jurisdiction because Plaintiffs failed to exhaust administrative remedies.

The Eleventh Amendment to the United States Constitution provides, in relevant part, that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." Although the Eleventh Amendment refers only to suits by citizens of other states, the United States Supreme Court has construed the Amendment to "establish that an unconsenting State is immune from suits brought in federal court by her own citizens as well as by citizens of

another state." *Port. Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (2009) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)) (markings omitted). The immunity created by the Amendment protects both the State, itself, and its agencies, divisions, departments, officials, and other "arms of the State." *Taylor v. Ozmint*, Case No. 0:10–50–HMH–PJG, 2011 WL 286133, at *2 (D.S.C. Jan. 7, 2011) (citing *Will v. Mich. Dept. of State Police,* 491 U.S. 58, 70 (1989)); *see also Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1977) ("[I]t has long been settled that the reference [in the Eleventh Amendment] to actions 'against one of the United States' encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities.").

"The question of whether an agency or a state official is properly considered an arm of the state and, therefore, entitled to Eleventh Amendment immunity, is a question of federal law." *Coonts v. Randolph Cty. Circuit Court Judge*, No. 2:15-CV-21, 2015 WL 12791398, at *2 (N.D.W. Va. Sept. 18, 2015) (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. 425 (1997)). To determine whether an official is an arm of the state, the Fourth Circuit applies a four-factor test, which considers "whether the state treasury will be responsible for paying any judgment that might be awarded ... whether the entity exercises a significant degree of autonomy from the state, whether it is involved with local versus statewide concerns, and how it is treated as a matter of State law." *Id.* Significantly, "[t]he Eleventh Amendment protects the State from the risk of adverse judgments even though the State may be indemnified by a third party." *Id.* (citing *Regents of the Univ. of Calif, v. Doe*, 519 U.S. at 431). In the instant action, it is unnecessary to apply the four-part test, because the law is well-settled that BSC is an arm of the State of West Virginia. *See* W. Va. Code §§ 18B-1-2(26), 18B-2A-1(b); *also, State ex rel. West Virginia Bd. of Ed.*

*v. Sims*, 101 S.E.2d 190, 193 (W. Va. 1957) (holding that "Bluefield State College is an arm of the state and has no existence independent of the state."). Therefore, BSC is entitled to sovereign immunity under the Eleventh Amendment.

Nevertheless, three narrow exceptions to Eleventh Amendment immunity exist. *Lee-Thomas v. Prince George's Cnty. Pub. Sch.*, 666 F.3d 244, 248-49 (4th Cir. 2012). First, the State may waive its right to immunity and consent to suit. *Lapides v. Bd. of Regents Univ. Sys. of Ga.*, 535 U.S. 613, 618 (2002). Such a waiver must be express, or in other words, the waiver must be an "unequivocal statement of the state's intention to subject itself to suit in federal court." *See Regueno v. Erwin*, No.: 2:13-cv-00815, 2013 WL 1837881, at *3 (quoting *Westinghouse Elec. Corp. v. W. Va. Dept. of Highways*, 845 F.2d 468, 471 (4th Cir. 1988)) (markings omitted). Second, "Congress may abrogate the States' Eleventh Amendment immunity when it both unequivocally intends to do so and 'act[s] pursuant to a valid grant of constitutional authority.'" *Bd. of Trustees of Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001) (quoting *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000)). Finally, "the Eleventh Amendment permits suits for prospective injunctive relief against state officials acting in violation of federal law." *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004) (citing *Ex Parte Young*, 209 U.S. 123, (1908)); *see also Freeland v. Ballard*, 6 F. Supp. 3d 683, 694 (S.D.W. Va. 2014) ("Pursuant to the Eleventh Amendment, a federal court may enjoin state officials to conform their future conduct to federal law, which is distinguishable from a retroactive monetary award paid from State funds.").

In *Fitzpatrick v. Bitzer,* 427 U.S. 445 (1976), the United States Supreme Court considered the question of State sovereign immunity in cases filed under Title VII of the Civil Rights Act. The Supreme Court determined that Congress was given authority under

the enforcement provisions of the Fourteenth Amendment to the United States Constitution to sanction private suits against States, which would be constitutionally impermissible in other contexts. *Id.*at 456. Thus, Congress had constitutional authority to abrogate sovereign immunity in Title VII actions. The Supreme Court further noted that in amendments to the Civil Rights Act, Congress expressly authorized federal courts to award money damages in favor of a private individual against a state government found to have discriminated on the basis of race, color, religion, sex, or national origin. As such, the Supreme Court concluded that Congress explicitly intended to abrogate the States' sovereign immunity in Title VII cases. *Id.* at 447, 457.

The Supreme Court reaffirmed the *Fitzpatrick* decision in *Quern v. Jordan*, 440 U.S. 332 (1979), adding that the statutory language of the Civil Rights Act of 1964 "made explicit reference to the availability of a private action against state and local governments in the event the Equal Employment Opportunity Commission or the Attorney General failed to bring suit or effect a conciliation agreement." *Id.* at 344. The holdings in *Fitzpatrick* and *Quern* have been acknowledged and applied in this circuit. *See Stewart, Jr. v. Va. Comm. Univ.,* 414 Fed. Appx. 555, 556 (4th Cir. 2011) (holding that Eleventh Amendment immunity in Title VII cases was abrogated by Congress). Accordingly, the second exception to sovereign immunity applies to Plaintiffs' Title VII claims against BSC. As such, the undersigned **FINDS** that BSC is not entitled to sovereign immunity from Plaintiffs' Title VII claims.

Next, the undersigned considers the issue of exhaustion. Before filing a lawsuit under Title VII, "a plaintiff must exhaust her administrative remedies by bringing a charge with the EEOC." *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247 (4th Cir. 2000). When a case of unlawful employment practice occurs in a State, which has a law

prohibiting such unlawful practices, the EEOC will allow the State an opportunity to resolve the matter before acting on the EEOC charge. 42 U.S.C. § 2000e-5(c). If the charge is lodged against a governmental agency or political subdivision and is not resolved by a conciliation agreement, or is dismissed, the EEOC will provide the complainant with a right-to-sue letter, advising the complainant that a civil action may be brought against the governmental agency or political subdivision within 90 days of receipt of the letter. 42 U.S.C. § 2000e-5(f)(1); *also Alvarado v. Board of Trustees of Montgomery Community College,* 848 F.2d 457, 458 (4th Cir. 1988) ("Under Title VII, a civil action may be brought after administrative proceedings have ended or conciliation attempts have failed.") "[The] receipt of, or at least entitlement to, a right-to-sue letter is a jurisdictional prerequisite that must be alleged in a plaintiff's complaint." *Davis v. N.C. Dep't of Correction,* 48 F.3d 134, 140 (4th Cir. 1995). The "EEOC charge defines the scope of a Plaintiff's right to sue." *Miles v. Dell, Inc.,* 429 F.3d 480, 491 (4th Cir. 2005) (quoting *Bryant v. Bell Atlantic Maryland, Inc.,* 288 F.3d 124, 132 (4th Cir. 2002). Therefore, the factual allegations asserted in the judicial complaint must correspond or be "reasonably related" to the allegations made in the EEOC charge. *Id.* (quoting *Smith v. First Union Nat'l Bank,* 202 F.3d 234, 247-48 (4th Cir. 2000).

Plaintiffs allege in the complaint and subsequently establish that they brought a Title VII charge with the EEOC and a right-to-sue letter was subsequently issued. (ECF No. 1 at 6, ECF No 43 at 2-5). In the EEOC charge, Plaintiff alleged discrimination by retaliation. She claimed that the retaliatory acts included the institution of a criminal charge against her for displaying a deadly weapon on campus and denial of her request for a promotion. (ECF No. 43 at 3). The EEOC determined that Plaintiff's charge did not state a violation that fell within any statute enforced by the EEOC. Accordingly, as to

Plaintiffs' Title VII claim for discriminatory retaliation, they have exhausted their remedies with the EEOC. To the extent BSC maintains that Plaintiffs failed to exhaust their Title VII administrative remedies, because they filed this lawsuit before Plaintiff had completed the grievance process with the PEGB, the undersigned is not persuaded. While Plaintiff's grievances may also allege retaliation, the PEGB is not authorized to determine liability under Title VII of the Civil Rights Act of 1964. *See Singh v. Nerhood,* No. 3:11-cv-00701, 2012 WL 4464025, at *8-9 (S.D.W. Va. Sept. 26, 2012); *see, also, Weimer v. Sanders,* 752 S.E.2d 398 (W. Va. 2013).

In *Weimer,* the West Virginia Supreme Court of Appeals ("WVSC") clarified that a public employee in West Virginia is not required to file a grievance with the PEGB prior to instituting a civil action alleging violations of the West Virginia Human Rights Act. *Id.* at 406. Similarly, a public employee who files a grievance based upon discrimination is not required to exhaust the grievance process before resorting to the court, if the judicial complaint alleges a violation of the Human Rights Act. *Id.* at 408. As the Court explained, public employees should not be treated differently from private employees in cases of discrimination and should not be deprived of the opportunity to proceed directly to court with such a claim. *Id.* at 407. Clearly, Plaintiffs' complaint intends to assert a claim under Title VII, a federal human rights statute. Applying the same logic used by the WVSC in *Weimer*, exhaustion of remedies with the PEGB is not a prerequisite to federal court jurisdiction over Title VII claims. To conclude otherwise would be illogical given that Plaintiffs had only 90 days from receipt of the right-to-sue letter in which to institute a federal court action. As indicated by Plaintiffs' supplement, filed November 9, 2017, the 90-day window would have expired long before Plaintiffs completed the grievance process with the PEGB; thereby, effectively precluding Plaintiffs from having the opportunity to

assert a Title VII claim in federal court.

Therefore, for the reasons stated, the undersigned **FINDS** that Plaintiffs have exhausted administrative remedies related to their Title VII claim of discriminatory retaliation.

Having determined that BSC's jurisdictional arguments are not persuasive, the undersigned examines Plaintiffs' Title VII allegations. In the complaint, Plaintiffs assert that Plaintiff was subject to discriminatory retaliation based upon her open and repeated criticisms of BSC's ineffectual administration; its fraud, abuse, and waste; its lack of transparency; its selective enforcement of rules; and its inequitable salary adjustments. "To establish a *prima facie* case of retaliation in contravention of Title VII, a plaintiff must prove (1) that she engaged in a protected activity, as well as (2) that her employer took an adverse employment action against her, and (3) that there was a causal link between the two events." *Boyer-Liberto*, 786 F.3d 281. Here, Plaintiffs do not satisfy their burden under the first element, because the complaint does not allege that Plaintiff was engaged in protected activity. Even construing the allegations in the light most favorable to Plaintiffs, the complaint indicates that Plaintiff complained about a variety of administrative actions, but none of those actions constituted potential violations of Title VII. Put simply, Plaintiff has never claimed that her criticisms of BSC, which were the purported reason for BSC's retaliation, were directed toward employment practices by BSC that involved discrimination on the basis of race, color, religion, sex, or national origin. Consequently, Plaintiffs fail to state a Title VII claim of retaliation. *See, e.g., Stevenson v. Delta Airlines, Inc.,* 251 F.Supp.3d 265, 268 (D.D.C. 2017) (finding that an employee's complaint regarding the wrongful disclosure of her medical information was not an activity protected by Title VII and, therefore, could not form the basis of a Title VII

retaliation claim); *Coleman v. Maryland Court of Appeals,* 626 F.3d 187, 191 (4th Cir. 2010 (holding that an employee's intervention in conflict between two colleagues was not a protected activity under Title VII and did not give rise to a Title VII retaliation claim); *and Mobley v. Advance Stores Co., Inc.* 842 F. Supp.2d 886, 891 (E.D. Va. 2012) (finding that an employee's complaints related to his employer's treatment of the employee's alleged medical disability did not involve race, color, religion, sex, or national origin; therefore, the complaints were not protected activity under Title VII and could not provide grounds for a Title VII retaliation claim.).

The undersigned notes that Plaintiffs have included allegations of "disparate treatment" and "hostile work environment" in the complaint. (ECF No. 1 at 10). In contrast to their complaint of Title VII discriminatory retaliation, a complaint based on either of these alleged violations is subject to dismissal for lack of exhaustion. Plaintiff did not allege these violations in her EEOC charge and, thus, did not exhaust administrative remedies related to those claims. Nonetheless, even if Plaintiffs had exhausted administrative remedies, Title VII claims of disparate treatment and hostile work environment would require dismissal, because the complaint is devoid of factual allegations necessary to satisfy the basic elements of such claims under Title VII.

In order to establish a Title VII claim of hostile work environment, Plaintiffs must demonstrate that Plaintiff was a member of a protected class and suffered an adverse employment action or hostile work environment *because of* her membership in the protected class. *Causey v. Balog*, 162 F.3d 795, 801 (4th Cir. 1998) (To prove hostile work environment, a plaintiff "must show that (1) the harassment was unwelcome; (2) the harassment was based on [race, color, religion, sex, or national origin]; (3) the harassment was sufficiently severe or pervasive to alter conditions of employment and

create an abusive atmosphere; and (4) there is some basis for imposing liability on the employer.") It is not sufficient for Plaintiffs to merely show that Plaintiff is a member of a protected class; rather, Plaintiffs must demonstrate that "but for" Plaintiff's membership in a protected class, she would not have been harassed. *Id.* While Plaintiff alleges that she is a woman over the age of 60, which "easily" places her in at least one protected class, Plaintiffs simply do not tie the alleged hostile work environment to Plaintiff's gender. (ECF No. 32 at 1). To the contrary, Plaintiffs explicitly deny that gender discrimination forms the basis of their complaint.[1]  (*Id.*). Instead, Plaintiffs insist that the "living hell" Plaintiff suffered at BSC was due to her longstanding and vocal criticism of how the current administration managed the college.

Similarly, to state a plausible *prima facie* case of disparate treatment under Title VII, Plaintiffs must include factual allegations in the complaint that demonstrate, either directly or indirectly, that BSC treated Plaintiff less favorably than her colleagues *because of* her sex, race, color, religion, or national origin. *Wright v. National Archives and Records Service,* 609 F.2d 702, 713 (4th Cir. 1979). In essence, Plaintiffs must "make out a prima facie case of discrimination." *Young v. United Parcel Service, Inc.,* 135 S. Ct. 1338, 1353 (2015) (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 575 (1978)). Plaintiffs can satisfy this burden with direct evidence of discrimination, or indirectly by "showing actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a

---

[1]  In their Response to Defendants' Motion to Dismiss, Plaintiffs indicate their desire to amend the complaint and add allegations of gender and age discrimination. (ECF No. 32 at 10). Plaintiffs have not filed a motion to amend as required by Fed. R. Civ. P. 15; therefore, the matter is not properly before the Court. Nevertheless, if Plaintiff had filed such motion, the undersigned would have recommended that the motion be denied. Plaintiffs have never asserted gender or age discrimination in any of their prior filings with the EEOC or in Plaintiff's grievances, nor have they provided a factual basis for claims of gender or age discrimination in the complaint, or in the many filings docketed after the complaint.

discriminatory criterion illegal under Title VII." *Id.* at 1354. Here, Plaintiffs do neither. To the contrary, Plaintiffs repeatedly state that Plaintiff was treated poorly due to her criticism of BSC's administration, not due to her status in a protected class.

Therefore, for the reasons stated, the undersigned **FINDS** that Plaintiffs fail to state any plausible Title VII claim against BSC, and any claims under Title VII should be dismissed, with prejudice.

### B. General Claims of Harassment, Retaliation, Intentional Infliction of Emotional Distress, Lack of Due Process, Denial of Promotion, and Breach of Privacy

The bulk of Plaintiffs' remaining claims relate to occurrences at BSC, which they believe demonstrate a pattern of harassment, retaliation, intentional infliction of emotional distress, and assorted unfair employment actions directed toward Plaintiff due to her vocal criticism of administration. Plaintiff has filed grievances pertaining to some of the occurrences, and both parties agree that Plaintiff has not exhausted the grievance process for any of the grievances submitted to the PEGB. Assuming this to be correct, then Plaintiffs have not exhausted their administrative remedies for the vast majority of their claims; thereby, depriving this Court of subject matter jurisdiction to address the workplace injustices described by Plaintiffs. *See Corbett v. Duerring,* 726 F.Supp.2d 648, 653 (S.D.W. Va. 2010) (holding that high school vice-principal was required to exhaust his administrative remedies under the PEGB before bringing a claim of wrongful termination under 42 U.S.C. § 1983).

The West Virginia legislature has determined that state employees in the field of higher education, such as Plaintiff, must bring workplace grievances to the PEGB. *See* W. Va. Code § 18B-2A-4(l). Indeed, the relevant statute provides that the West Virginia Public Employees Grievance Procedure ("PEGP") is the *exclusive* mechanism in the State

of West Virginia for hearing public employee grievances. *Subramani v. West Virginia University Board of Governors,* No. 14-0924, 2015 WL 7628720. at *5 (W. Va. Nov. 20. 2015) (citing W. Va. Code § 6C-2-1, *et seq.*).  The PEGP requires the public employee to complete various steps, as previously described by this Court:

> The PEGP is a statutorily created administrative system put in place to aid resolution of employee grievances raised by public employees of the State of West Virginia. The procedure within this administrative system consists of three levels. After unsuccessful resolution at each preceding level, the employee may request to proceed to the next level of review. At Level One, the aggrieved employee is eligible for a hearing or conference. Level Two requires the employee and her employer to participate in alternative dispute resolution. Finally, Level Three provides for a hearing before an administrative law judge ("ALJ"). The decision of the ALJ at the Level Three hearing is appealable to the Kanawha County Circuit Court.

*Singh v. Nerhood,* No. 3:11-cv-00701, 2012 WL 4464025, at *5 (S.D.W. Va. Sept. 26, 2012) (internal citations omitted). For the purposes of the PEGP, a "grievance" includes, in relevant part, any claim by an employee alleging the violation, misapplication, or misinterpretation of a statue, policy, rule, or agreement applicable to the employee; a violation, misapplication, or misinterpretation regarding compensation terms, conditions of employment, or employment status; harassment; favoritism; and any action, policy, or practice constituting a substantial detriment to or interference with the effective job performance of the employee. W. Va. Code § 6C-2-2(i).

As indicated by the factual allegations lodged against each separate defendant, Plaintiffs' claims of harassment, denial of a promotion, breach of privacy, intentional infliction of emotional distress/hostile work environment, lack of due process, and retaliation clearly fall within the definition of grievance and, consequently, must be submitted to the PEGB for consideration. *See Subramani*, 2015 WL 7628720, at *5-6 (W. Va. Nov. 20, 2015) (holding that a professor's claims of retaliation, harassment, denial of

24

due process, denial of promotion, breach of confidentiality arising from his employment with West Virginia University required exhaustion under the PEGP). Exhaustion of the administrative remedies provided by the PEGP cannot be excused or circumvented; rather, exhaustion is a "jurisdictional prerequisite to the filing of an independent civil action." *Singh,* 2012 WL 4464025, at *6 (citing *State ex. rel. Arnold v. Egnor,* 275 S.E.2d 15, 22 (W. Va. 1981)).[2] Plaintiffs bear the burden of demonstrating that they have exhausted the available administrative remedies; they have not carried their burden. Plaintiffs admit that one grievance was abandoned prior to completion of the grievance procedure, at least one other grievance remains pending, and other grievances have not or were never pursued with the PEGB. (ECF No. 32 at 11). Given the status of Plaintiff's grievances, the undersigned **FINDS** that Plaintiffs' remaining claims against the defendants alleging harassment, intentional infliction of emotional distress, retaliation, denial of promotion, lack of due process, and breach of privacy should be dismissed, without prejudice, for failure to exhaust administrative remedies.

Notwithstanding the broad scope of the PEGP, when liberally construing the allegations in Plaintiffs' filings, the undersigned **FINDS** two potential causes of action that arguably do not fall within the definition of "grievance" under the PEGP and, thus, may not require administrative exhaustion. Those causes of action include malicious prosecution and defamation. The undersigned addresses these claims in turn below.

### C.  Malicious Prosecution

Apart from the assorted claims related to Plaintiff's work environment, Plaintiffs contend that Defendant Johnson conspired with Defendant Brooks to humiliate Plaintiff

---

[2] There are some exceptions to the exhaustion requirement, *see Subramani, supra*; however Plaintiffs have not alleged an exception, nor do the allegations indicate the availability of any exception.

by initiating a criminal case against her. As previously stated, Plaintiff was given a citation by Defendant Brooks, charging her with the misdemeanor crime of disturbing a school. The citation was written after Plaintiff brought a stun gun and pepper spray to one of her classes and briefly displayed them to the students. (ECF No. 1 at 11, ECF No. 32 at 8, 13). Plaintiffs do not dispute the acts attributed to Plaintiff, but argue that the citation was issued maliciously and that Johnson and Brooks attempted to fabricate or misrepresent evidence to substantiate the criminal charge. As a consequence of the citation, Plaintiff was forced to appear before a county magistrate, who was Plaintiff's former student, and this experience was humiliating, intimidating, and inconvenient. (ECF No. 5 at 2). Ultimately, the charge was dismissed by the county magistrate upon a motion by the county prosecutor, who did not believe he could prove the charge beyond a reasonable doubt.

A common law claim of malicious prosecution involving two citizens of the same state typically will not trigger federal court jurisdiction. However, a variation of the traditional malicious prosecution claim may be brought in federal court under 42 U.S.C. § 1983, when the facts demonstrate that the plaintiff suffered an illegal seizure in violation of the Fourth Amendment to the United States Constitution. *See Albright v. Oliver,* 510 U.S. 266, 271 (1994) (holding that a claim of malicious prosecution may state a constitutional violation of a person's right to be free from unreasonable seizures.). The Fourth Circuit also recognized that a malicious prosecution claim could raise a constitutional question when the claim involved "a seizure that was violative of the Fourth Amendment." *Brooks v. City of Winston-Salem,* 85 F.3d 178, 184 (4th Cir. 1996). The Fourth Circuit explained the difference between a common law malicious prosecution claim  and a comparable federal claim, stating that "[t]here is no such thing as a § 1983

malicious prosecution claim"; instead, this type of claim is "simply a claim founded on the Fourth Amendment seizure that incorporates elements of the analogous common law tort of malicious prosecution." *Lambert v. Williams,* 223 F.3d. 257, 262 (4th Cir. 2000).

The Fourth Amendment to the United States Constitution protects a person's right to be free from unreasonable seizure. *Manuel v. City of Joliet, Ill.*, 137 S. Ct. 911, 917, 197 L. Ed. 2d 312 (2017). Therefore, a malicious prosecution claim couched in the Fourth Amendment must contain the following elements: [1] the defendant must have "seized plaintiff pursuant to legal process that was not supported by probable cause" and [2] "the criminal proceedings [must] have terminated in plaintiff's favor." *Smith v. Munday*, 848 F.3d 248, 252–53 (4th Cir. 2017) (quoting *Massey v. Ojaniit*, 759 F.3d 343, 356 (4th Cir. 2014)). A person is "seized … and thus entitled to challenge the government's action under the Fourth Amendment when [an official] by means of physical force or show of authority terminates or restrains his freedom of movement." *Brendlin v. California,* 551 U.S. 249, 254 (2007) (citation and internal markings omitted). Probable cause is "defined in terms of facts and circumstances sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *George v. Kanawha County Sheriff's Department,* No. 2:08-0141, 2011 WL 108930 *2 (S.D.W. Va. Jan. 11, 2011) (quoting *Gerstein v. Pugh,* 420 U.S. 103, 111 (1975)). Probable cause requires more than a mere suspicion, but does not require evidence sufficient to obtain a conviction. *Wong Sun v. United States,* 371 U.S. 471, 479 (1963). "The existence of probable cause 'always turns on two factors in combination: the suspect's conduct as known to the officer, and the contours of the offense thought to be committed by that conduct.'" *George,* 2011 WL 108930, at *2 (quoting *Pritchett v. Alford,* 973 F.2d 307, 314 (4th Cir. 1992)). "When no reasonable officer could believe, in light of the circumstances of the offense, that probable

cause exists, there is a violation of a clearly established Fourth Amendment right to be arrested only upon probable cause." *Id.* at *2-3.

In light of the facts alleged in the complaint, the undersigned **FINDS** that Plaintiffs fail to state a Fourth Amendment claim of malicious prosecution against Defendants Johnson and Brooks. To begin, Plaintiffs have not established that a "seizure" occurred. Plaintiffs allege that Defendant Brooks wrote Plaintiff a citation, but Plaintiffs do not contend that Plaintiff was arrested or officially detained by Defendant Brooks, or by any other government official. Plaintiff was required to appear before a county magistrate, but the magistrate neither restrained, nor incarcerated Plaintiff. In the absence of evidence that Plaintiff was deprived of her liberty, Plaintiffs cannot maintain a federal constitutional claim for malicious prosecution. *See, e.g., Considine v. Jagodinski*, 646 F. App'x 283, 287–88 (3d Cir. 2016) (finding that no Fourth Amendment seizure occurred as Considine was "never arrested, was never otherwise placed into custody, and was only burdened by having to appear in the magistrate court's hearing and the the subsequent Court of Common Pleas proceeding."); *and Benard v. Washington County,* 465 F.Supp.2d 461 (W.D. Pa. 2006) (declining to find a Fourth Amendment seizure when plaintiff was released on her own recognizance and required to attend court proceedings).

Moreover, Plaintiffs have not demonstrated that Brooks lacked probable cause to issue the citation. Plaintiff was charged with disturbing a school, a misdemeanor charge. *See* W. Va. Code § 61-6-14. According to W. Va. Code § 61-6-14, disturbing a school occurs when a "person willfully interrupt[s], molest[s] or disturb[s]" a school. *Id.* Plaintiff admits that she brought a stun gun and pepper spray on BSC's campus without prior authorization; she then "willfully" displayed them to students in her class, again without permission and without warning. (ECF No. 32 at 13). The unauthorized display of

weapons on campus triggered an investigation, which by its very nature, disrupted BSC's ordinary business operations. Plaintiffs acknowledge that before issuing the citation, Defendant Brooks discussed the situation with a county magistrate. (ECF No. 43 at 6). Only after that discussion did Defendant Brooks provide Plaintiff with the citation. Plaintiff appeared before the same county magistrate on September 8, 2016, and the charge was *not* dismissed at that time. (ECF No. 5 at 2; ECF No. 43 at 6). Instead, the magistrate asked Plaintiff if she wanted to pay a fine. Plaintiff refused and responded that she wanted a jury trial. (ECF No. 43 at 6).

Although the citation was dismissed two months later, the subsequent dismissal does not establish that Defendant Brooks lacked probable cause to issue the citation. The level of certainty required to make a finding of probable cause is considerably less than the level of proof necessary to establish that an individual is guilty of a crime beyond a reasonable doubt. While termination of the proceedings in Plaintiff's favor is a requisite element of a malicious prosecution case, the absence of probable cause is a separate element that cannot be established simply by a dismissal of the charge. *Phipps v. Grady*, No. 7:15-CV-00103-F, 2016 WL 4556763, at *4 (E.D.N.C. Aug. 31, 2016) (holding that "[t]he probable cause standard for issuance of an arrest warrant is far lower than the government's burden of proof beyond a reasonable doubt in a criminal trial. Accordingly, it is unremarkable that the government could meet the first threshold while falling short of the second.").

In order to proceed with their malicious prosecution claim, Plaintiffs have the burden to plead and demonstrate a lack of probable cause underlying the citation. *See Jarvis v. West Virginia State Police,* 711 S.E.2d 542, 549 (W. Va. 2010). Plaintiffs have not carried this burden. From the factual scenario recounted by Plaintiffs, the

undersigned can infer that on September 8, 2016, the magistrate found probable cause for the charge asserted in the citation. Indeed, such a finding would have been necessary for the charge to move forward to the point where Plaintiff requested a trial. In the absence of factual information demonstrating that the magistrate did not make such a finding, or that her finding was unreliable, courts generally give great deference to a magistrate's determination of probable cause. *United States v. Leon,* 468 U.S. 897, 914 (1984). Plaintiff have provided no factual basis upon which the Court can conclude that there was a lack of probable cause to support the citation.

For these reasons, the undersigned **FINDS** that Plaintiffs have not stated a plausible claim of malicious prosecution against Defendants Johnson and Brooks.

### D. Defamation

Plaintiffs also allege that Defendants Perdue and Robinson are liable for defamation. Because this claim does not squarely fall within the matters subject to review by the PEGB, the undersigned examines the factual allegations asserted by Plaintiffs to determine if their claim of defamation can survive a motion to dismiss. Plaintiffs assert that Defendant Robinson, BSC's Vice-President of Student Affairs, allowed Defendant Perdue, Editor of BSC's student publication, to publish an anonymous letter on February 3, 2016 that was defamatory to Plaintiff. In particular, the letter referenced the Criminal Justice Department, to which Plaintiff is assigned, and purportedly mocked "contentious actions related to online learning platforms." (ECF No. 1 at 14). Plaintiffs do not allege that Plaintiff was identified by name in this letter, nor do they claim that the statements or opinions in the anonymous letter were false. To the contrary, Plaintiffs acknowledge that the letter "did not mention any names" and "was intended to mock, ridicule, and insult, with malice, faculty in 3 programs specifically named." (ECF No. 32 at 34)

30

(emphasis added).

"The essential elements for a successful defamation action by a private individual are (1) defamatory statements; (2) a nonprivileged communication to a third party; (3) falsity; (4) reference to the plaintiff; (5) at least negligence on the part of the publisher; and (6) resulting injury." *Crump v. Beckley Newspapers, Inc.,* 320 S.E.2d 70, syl. Pt. 1 (W. Va. 1983). An action for defamation must be brought within one year, or it is barred by the statute of limitations found in W. Va. Code § 55-2-12. *See Garrison v. Herbert J. Thomas Mem'l Hosp. Ass'n,* 438 S.E.2d 6, 13 (1993). Here, apart from the statute of limitations issue, Plaintiffs clearly have not stated the essential elements of a defamation claim. First, Plaintiff admits that she was not referenced by name in the letter and the article discussed three different academic departments at BSC. Although Plaintiffs state in a conclusory fashion that Plaintiff was one target of the letter, Plaintiffs supply no factual basis for that conclusion; particularly, as other statements made by Plaintiffs confirm that Plaintiff is not the only faculty member in the Criminal Justice Department.

Second, Plaintiffs fail to provide the Court with any factual allegations demonstrating a defamatory statement. Instead, Plaintiffs' complaint contains only unsupported and conclusory allegations that the published letter was "insulting and offensive." The subject matter of the letter—disagreement over online learning platforms—plainly is not inherently salacious. Unlike publications that accuse individuals of crimes, collusion, or acts of moral turpitude, the letter described by Plaintiffs does not lend itself to a finding of defamation *per se. See, e.g., Mauck v. City of Martinsburg,* 280 S.E.2d 216, 219 n. 3 (holding that a statement is defamatory *per se* if involves "imputations of a crime of moral turpitude, imputations of a loathsome disease, imputations of sexual misconduct by a woman, and imputations which affect a business,

trade, profession or office"); *and Belcher v. Wal-Mart Stores, Inc.,* 568 S.E.2d 19, 27 (W. Va. 2002) (holding that "a statement may be described as defamatory 'if it tends so to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him.'") (citations omitted). Indeed, nothing about the publication, as recounted by Plaintiffs, seems to be particularly defamatory or even offensive. Defendants argue, and the undersigned agrees, that Plaintiffs have failed to include sufficient facts in the complaint and in their supplemental filings to state a plausible claim of defamation.

Therefore, for the reasons stated above, the undersigned **FINDS** that the complaint fails to state a plausible claim of defamation against Defendants Perdue and Robinson.

## VI.    Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Defendants' Motion to Dismiss, (ECF No. 28), be **GRANTED** as follows:

1.    Plaintiffs' Title VII claims be dismissed, with prejudice;

2.    Plaintiffs' unexhausted claims be dismissed, without prejudice;

3.    Plaintiffs' Fourth Amendment and defamation claims be dismissed, without prejudice, as variations of these claims may be filed in State court.

The parties are notified that this PF&R is hereby **FILED**, and a copy will be submitted to the Honorable David A. Faber, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (for the filing of objections) and three days (if this document was received by mail) from the date of filing

this PF&R within which to file with the Clerk of this Court, specific written objections, identifying the portions of the PF&R to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to Judge Faber and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Plaintiff, counsel of record, and any unrepresented party.

**FILED:**  January 19, 2018

Cheryl A. Eifert
United States Magistrate Judge